UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION NO. SA-02-CR-067-OG |
| | ) | |
| DOMINIC NELMS, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS
## [SPEEDY TRIAL]

Pending before the Court is Defendant's Motion to Dismiss for Speedy Trial Violation (Dkt. # 19). The Government has filed a response (Dkt. # 22), and the Court held a hearing on June 22, 2006 to hear evidence and arguments of counsel. After reviewing the motion, response and applicable law, and after considering the evidence relating thereto, the Court finds that Defendant's motion to dismiss should be denied.

Defendant has been indicted on one count of unlawful possession of a firearm by a convicted felon. The offense allegedly occurred on or about February 28, 2001. Defendant was indicted on February 20, 2002. A federal warrant for Defendant's arrest was issued on February 21, 2002; however, Defendant's whereabouts were unknown and an investigation to locate him ensued. On January 3, 2006, Defendant was arrested and he made his first appearance on January 9, 2006. The instant motion to dismiss is based on the delay between the date of indictment and the date of Defendant's arrest – almost four years later.

Three ATF agents handled the investigation over the four year period, and Christopher Benavides, the last agent to handle the investigation, testified at the hearing.[1]  The agents first made sure the identifying information in the warrant was accurate, and then periodically performed computer searches based on name and social security number in an attempt to find information relating to residence, utility records, phone records, vehicle registration and drivers license records. In September 2004, the agent conducted surveillance at the address known to be the residence of Defendant's mother.  Defendant was not seen coming or going, and the agent did not approach or question the mother about his whereabouts.  In December 2004, Agent Benavides began handling the case, and he requested a subpoena for records, but was not successful.  Finally, in December 2005, Agent Benavides was able to search quarterly earnings reports and found a place of employment.  He conducted surveillance at the location, and Defendant was apprehended and arrested at that location a few days later.[2]  When officers approached him, Defendant initially denied his identity.  At the time of his arrest, Defendant had one or more outstanding state warrant(s) for his arrest.[3]

Agent Benavides testified that Defendant's drivers license had expired before the federal warrant was issued, and that Defendant never renewed it.  He also testified that Defendant had occasionally used a different social security number, date of birth, name or nickname within the time

---

[1]During the time period in question, several fugitive status reports were submitted by the investigating agents, and Agent Benavides' testimony was based on those reports as well as his personal knowledge.

[2]After the arrest, the officers determined that Defendant was residing across the street from his place of employment.  However, the lease, phone and utility records for that address were listed under a different name.

[3]One state warrant was related to a 2002 indictment, and the warrant was issued in 2002.  There was also a failure to appear warrant that had been issued in 2001.

frame in question.  In Agent Benavides' opinion, Defendant did not want law enforcement officials to find him, and took certain steps to avoid them.

Defendant claims that the Government simply failed to use due diligence.  He argues that the agents should have put their "boots on the ground" when it was obvious that computer searches were not revealing any results.  For example, both state and federal law enforcement officials knew his mother's address, and that he had once lived with her.  Yet none of the agents ever attempted to talk to his mother.   He also argues that the computer searches during the first two years were strictly limited to a check on the warrant to determine whether it was active, and a check of drivers license records, and the more extensive computer searches did not begin until May 2004.  Agent Benavides could not dispute the limited nature of the computer searches during the first two years, but he did state that ATF agents do not routinely talk to relatives or friends because it simply puts the defendant on notice that they are looking for him.

The Court must assess four factors in reviewing a speedy trial claim.  Those factors are: length of delay, the reason for the delay; the defendant's assertion of his right; and prejudice to the defendant.  Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192 (1972); Doggett v. United States, 505 U.S. 647, 650, 112 S.Ct. 2686, 2690 (1992).  "The length of the delay is to some extent a triggering mechanism.  Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."  Wingo, 92 S.Ct. at 2192.  The Government concedes that a delay in excess of one year triggers the speedy trial analysis; therefore, the remaining factors must be considered in this case.  See Doggett, 112 S.Ct. at 2691 n.1.[4]

---

[4]See Gov't response, pp. 2-3.

In assessing the reason for the delay, the Court must determine whether the Government was responsible for the delay and, if so, whether the Government's actions were deliberate or mere negligence.  Wingo, 92 S.Ct. at 2192 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government.  A more neutral reason such as negligence ... should be weighed less heavily but nevertheless should be considered ...").  The Court should also determine whether the delay was the fault of the defendant, in whole or in part.[5]

In this case, the Government's actions were certainly not deliberate.  The Government did take certain steps to locate Defendant, and it did not abandon the case.  Its efforts were, however, somewhat dismal.  There were extended periods of time when it was apparent that the computer searches were not producing any results, and the agents handling the investigation could have taken more aggressive steps to locate Defendant.  However, the Court cannot conclude that the Government's efforts were unreasonable under the circumstances.  It simply appears that the case was not a high priority during most of the four-year period in question.

On the other hand, it also appears that Defendant took certain steps to avoid law enforcement officials during such time.  He did not renew his drivers license, nor did he seek any services that would have been registered in his name.  When the agent handling the case finally found him and the arresting officers approached him, Defendant denied his identity.  Thus, while the Defendant may not have taken drastic measures to avoid law enforcement officials, he did take certain steps to shroud his identity and whereabouts during the time period in question, and this obviously hindered the agents' efforts to find him.

---

[5]As noted by the Supreme Court, the delay "may work to the accused's advantage," and any facts that reflect an effort by the defendant to evade arrest or delay the trial should be taken into consideration.  Wingo, 92 S.Ct. at 2187.

In sum, the Government is not solely responsible for the delay, and the reasons for the delay are not unreasonable.  The agents would have located Defendant much sooner if he had not shrouded his identity and location, and their efforts likely would have been sufficient under normal circumstances.

The next factor, which is the defendant's assertion of his right to a speedy trial, is obviously met in this case.  Defendant filed the instant motion within two months after making his initial appearance.  The assertion of his right to a speedy trial was timely.

The fourth and final factor is prejudice.  The Court must assess prejudice in light of the interests which the Sixth Amendment was designed to protect: (1) prevention of oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired.  Wingo, 92 S.Ct. at 2193.  In Doggett, the Supreme Court emphasized the possible harm that may occur to the defense as the result of trial delay, and determined that presumptive prejudice will likely apply if all of the other factors in the speedy trial analysis are favorable to the defendant.  Doggett, 112 S.Ct. at 2693.  However, if the defendant is partly to blame for the delay, and if the Government's used reasonable diligence in pursuing him, the defendant will not be entitled to rest on a presumption of prejudice.  Id.  Instead, he must make a showing of actual prejudice.  Id. at 2693.[6]

In this case, the Court finds that Defendant is not entitled to a presumption of prejudice, and he must make a showing of specific prejudice.  Although Defendant has alleged that witness(es)

---

[6]The Supreme Court explained that even if the Government was negligent in its pursuit of the defendant, the Court must consider the extent to which such negligence caused the delay, and the length of delay attributable to the Government, before deciding whether presumptive prejudice will apply.  Doggett, 112 S.Ct. at 2694-2695.

cannot be located and/or are unavailable as a result of the passage of time, he has not identified those witnesses, explained the factual basis of their knowledge, or the efforts that have been made to locate and interview those witnesses.  Therefore, the Court has not been presented with anything other than bare allegations of prejudice, which will not suffice.

It is therefore ORDERED that Defendant's Motion to Dismiss (Dkt. # 19) is DENIED.

**It is so ORDERED.**

**SIGNED this 11th day of September, 2006.**

**ORLANDO L. GARCIA**
**UNITED STATES DISTRICT JUDGE**